SOPHRONIA E. ROBINSON

*vs.*

PENNSYLVANIA INSURANCE COMPANY.

Knox. Opinion April 11, 1895.

*Fire Insurance.    Dwelling-House.    Carriage-House.*

There is no rule of law in fire insurance declaring how near a carriage-house must be to a dwelling-house to belong with it.

If it is on the same lot, and is actually used as an appurtenance of the dwelling-house, the fact that it is one hundred and eighty-nine feet from the dwelling-house does not prevent its being regarded as belonging with the dwelling-house; nor does the fact that it is used in part for other purposes prevent its being so regarded. These are circumstances which, in a case of doubt, may be considered by the jury; but the jury can not be rightfully instructed as matter of law, that they are conclusive.

*Held*; that an instruction to the jury, that if a building is one hundred and eighty-nine feet away from a dwelling-house, and is used in part for other purposes, it cannot be regarded as a carriage-house belonging with the dwelling-house, and be so described in an insurance policy, was erroneous.

This was an action on a policy of fire insurance in which the jury returned a verdict for the defendant and the plaintiff took exceptions. The exceptions show the following facts:

On the 27th day of May, 1892, the plaintiff took out a policy from the defendant company for three years at a premium of one per cent for three years on certain goods and chattels. A part of the goods and chattels covered by said policy was: "Three hundred and twenty-five dollars on her vehicles of all kinds, harnesses, robes, and all horse-furnishings, hay and grain, together with farming

and miscellaneous tools, all while contained in her frame stable and carriage-house buildings, belonging with said dwelling-house and on said lot."

The plaintiff was then in occupation of a one and one-half story frame dwelling-house and ell with a stable attached to the ell.

On the same lot of land the plaintiff erected a new building which was finished on the 28th day of May, 1892, the day following the issuing of the above named policy. The husband and agent of the plaintiff testified that said new building was to be used for a carriage-house and paint shop. It was situated on the same parcel of land upon which the plaintiff's dwelling-house, ell and stable were standing, but by actual measurement, was one hundred and eighty-nine feet from such stable.

On the 30th day of June, 1892, the defendant company issued to the plaintiff and her son, Oscar E. Robinson, a policy of insurance of that date upon said new "carriage-house and paint shop building" and its contents consisting of paint stock, furniture, vehicles, &c. This last named policy was for one year at a premium of one per cent for one year. There was testimony tending to show that the new building, from the time of its completion to the 30th day of September, was used in part for the storage of carriages, &c., a portion of which was not intended for use by the plaintiff or her family but for the purpose of traffic, and in part by said Oscar E. Robinson in making and painting carriages. During said time said Oscar E. had made one carriage and had painted that and one other carriage in said building.

On the thirtieth day of September, 1892, the new building and its contents were destroyed by fire. The contents consisted of several carriages and several parts of unfinished carriages, the property of the plaintiff, and also a quantity of paint stock valued at $144.55, the property of Oscar E. Robinson, the carriage maker and painter.

The defendant claimed that the goods and chattels insured to the plaintiff, by the policy of May 27th, were not within the terms of the policy, unless such policy covered her property in the new building.

Before the commencement of this suit the defendant company had paid to the plaintiff and Oscar E. Robinson the full amount of insurance under the policy of June 30th, on the new building and contents. The plaintiff brought this suit upon the first named policy, that of May 27th, and claimed to recover for the goods and chattels which were contained in the new building at the time of its destruction by fire.

The defendant contended that the policy of May 27th, upon which this suit is brought, did not, by its terms or in fact, insure any of the contents of the new carriage-house and paint-shop building which was completed after the issuing of the policy of May 27th, and which was occupied from the time of its erection until its destruction as a carriage and paint shop.

The issue to the jury was, therefore, whether the plaintiff's vehicles and horse-furnishings contained in the new building and destroyed on the 30th of September, were included and covered by the policy in suit, dated May 27th.

*True P. Pierce*, for plaintiff.

*Wm. H. Fogler*, for defendant.

The question as to the location of the building and its use was, therefore, left to the jury as a question of fact, and the verdict shows that the jury found the location and the use to be as claimed by the defendant.

The goods of the plaintiff were covered by the policy only while in the place stipulated in the contract. *Bradbury* v. *Ins. Co.* 80 Maine, 398-9; 2 May on Insurance, §§ 401, a, 401, b. In *Bradbury* v. *Ins. Co. supra,* the court say: "The general rule stated by text writers and held by the general current of decided cases is, that the place where the personal property is kept is the essence of the contract, as by that the character of the risk is largely determined, and the property is covered by the policy only while in the place described.

The buildings named in the policy in which the plaintiff's property should be contained to be covered by the contract of insurance are specifically defined. First, they must be " on the same lot;" second, they must be "belonging with the dwelling."

"Belonging" is defined by Webster, "pertaining," "appertaining," "being appendant to." A building "belonging with a dwelling-house" must therefore mean a building "appertaining to," or "appendant to" the dwelling.

The jury were instructed that if this building was used as a carriage-house in connection with the dwelling its contents would be included in the terms of the policy. Such instruction was sufficiently favorable to the plaintiff. But the jury were further instructed that if it was used as a place for carrying on the work of building and painting carriages for purposes of trade or traffic its contents would not be so included, because it would not in such case belong to or be appended to the dwelling. These instructions are not only in accord with legal and grammatical rules of construction but, as sufficiently appears in the exceptions, they were undoubtedly in accord with the intention and understanding of the parties to the contract.

The building was erected to be used, in part at least, for a paint shop. It was placed at a distance from the dwelling-house so as to avoid an increase of premium upon the last named building and its contents. The premium upon the contents of the new building was three times as large as that upon the dwelling and the buildings belonging with it and the contents of the same. The last policy contained no statement of any prior insurance which it would undoubtedly have contained if the policy in suit had been intended to cover the goods in the new building.

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WHITEHOUSE, WISWELL, JJ.

WALTON, J. This is an action on an insurance policy. The first clause of the policy insures the plaintiff's household goods and furniture. The second clause insures a horse. The third clause insures a cow. The fourth clause is the one to be considered, and it is as follows: "Three hundred and twenty-five dollars on her vehicles of all kinds, harnesses, robes, and all horse-furnishings, hay and grain, together with farming and miscellaneous tools, all while contained in her frame stable and carriage-

house buildings, belonging with said dwelling-house and on said lot."

The property burned was in a building which the plaintiff ( Mrs. Robinson ) claims was her carriage-house, belonging with her dwelling-house, and on the same lot.

The insurance company claims that, under the circumstances disclosed in the evidence, the building burned can not be regarded as a carriage-house belonging with the plaintiff's dwelling-house ; that although upon the same lot, it was too far away from the house, and was used in part at least by the plaintiff's son as a work shop and a paint shop and a place of traffic.

At the trial in the court below, the presiding justice instructed the jury as follows :—

"I instruct you that, 'her frame stable and carriage-house buildings belonging with said dwelling and on the same lot,' can not mean a separate building situated eleven and one-half rods, or one hundred and eighty-nine feet from the dwelling-house, provided you are satisfied that that building, thus situated, was used as a paint shop, as a work shop, and as a place of business, or of labor. Her carriage-house must be a building belonging with the dwelling-house,— 'belonging with,' meaning pertaining to the dwelling-house. It might, if it were so situated as a mere store house and carriage-house and used with the building, and not for the purposes of trade or traffic, or for the purposes of an industry. In other words, if it was a carriage-house, and nothing else, it would be within the meaning of the policy. But, situated eleven and one-half rods, or one hundred and eighty-nine feet, from the dwelling-house,— if you are satisfied of that fact,— and if you are satisfied of the fact that the son of this plaintiff carried on the manufacturing of carriages there, and of painting, and using it for a paint shop, and for other purposes of traffic, then I instruct you it would not be a 'carriage-house building belonging with said dwelling,' within the meaning of this contract. But if, on the other hand, you are satisfied, as I have said, that it was used merely for a carriage-house, and used for no other purpose than a carriage-house, or not used for the purpose of traffic, for purposes of

manufacturing carriages, and as a paint shop, then it would be appertaining to or belonging to the dwelling, although situated at that distance. It is a question of fact for you whether or not this carriage-house was so used, as is claimed by the defense, for purposes other than as a carriage-house, for a paint shop, as a place of traffic, and manufacturing carriages. If so and the property was destroyed therein, this plaintiff can not recover. It would not be a ' carriage-house belonging with said dwelling, and on the same lot.'"

We do not think this instruction can be sustained. The assumption that if a building is one hundred and eighty-nine feet away from a dwelling-house, and is used in part for other purposes, it can not be regarded as a carriage-house belonging with the dwelling-house, and be so described in an insurance policy, seems to us to be clearly erroneous. It often happens that a building is used for several purposes. The first story may be used as a carriage-house, the second story as a work shop, and the third story as a paint shop, and we fail to see any reason why, in such a case, the painter may not insure his property, and describe it as contained in his paint shop; nor why the mechanic may not insure his, and describe it as kept in his work shop; nor why the owner of the carriages, harnesses, and other articles usually kept in a carriage-house, may not insure his property, and describe it as contained in his carriage-house ; nor why, in the absence of fraud, or deception, or breach of warranty, the insurance of property so situated and so described may not be valid. Surely, there is no rule of law declaring how near a carriage-house must be to a dwelling-house to belong with it. If it is on the same lot, and is actually used as an appurtenance of the dwelling-house, we fail to see why the fact that it is one hundred and eighty-nine feet from the dwelling-house should prevent its being regarded as belonging with the dwelling-house; nor why the fact that it is used in part for other purposes should prevent its being so regarded. These are circumstances which, in a case of doubt, may be considered by the jury ; but we do not think that the jury can be rightfully instructed, as a matter of law, that they are conclusive.

*Exceptions sustained.*